REAG, INC., Plaintiff and Counterclaim
Defendant,

v.

UNITED STATES of America,
Defendant and Counterclaim
Plaintiff.

No. CIV–91–1267–C.

United States District Court,
W.D. Oklahoma.

Aug. 28, 1992.

James H. Rice, Midwest City, Okl., for plaintiff/counter-defendant.

Dennis M. Duffy and Jay P. Golder, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant/counter-claimant.

## MEMORANDUM OPINION

CAUTHRON, District Judge.

### I. INTRODUCTION

This case was tried to the Court on August 10–11, 1992. Plaintiff appeared through counsel, James H. Rice of Midwest City, Oklahoma. Defendant appeared through counsel Dennis M. Duffy and Jay P. Golder both with the Department of Justice in Washington, D.C. Having heard testimony of witnesses and considered all properly admitted exhibits, the Court enters the following opinion which shall constitute its findings of fact and conclusions of law.

This case involved a failure to withhold federal social security and unemployment taxes for real estate appraisers. The government claimed that the taxes were supposed to be paid because the workers were employees of plaintiff. REAG claimed that no taxes were due and owing because the workers were independent contractors.

### II. LEGAL ISSUES

1. Whether on the facts presented, the appraisers were employers or independent contractors.

2. Whether on the facts presented, REAG reasonably relied on a long-standing recognized practice of a significant segment of the appraisal industry.

3. Whether on the facts presented, REAG treated any person holding a position substantially similar to the appraisers as an employee.

4. Whether on the facts presented, REAG had a reasonable basis for treating the appraisers as independent contractors.

5. What is a significant segment of the appraisal industry for purposes of the "safe harbor" under Section 530 of the Revenue Act of 1978? *See* 26 U.S.C. ("I.R.C.") § 3401 note.

6. If REAG qualifies for the safe harbor, need REAG only show that it had a reasonable basis for not treating the appraisers as employees under the common law rules applicable in determining the employer-employee relationship rather than bearing the burden of proof by a preponderance of the evidence on this issue?

### III. STIPULATIONS

On September 3, 1990, a delegate of the Secretary of the Treasury made assessments in the total amount of $47,686.26 against REAG, Inc. REAG paid $150 and timely filed an administrative claim for a refund, which was denied by the IRS. REAG brought this suit against the United States seeking a refund of its $150 payment.

The United States properly filed a counterclaim against REAG for the unpaid portion of the assessments in the total amount of $47,536.26, plus statutory interest and additions accruing after the dates of the assessments.

REAG is in the business of conducting real estate appraisals. During the years in question, approximately 70 to 80 percent of REAG's appraisal work related to residential property, with the remainder relating to commercial property.

REAG was incorporated in 1981 and was owned during the period in question by John W. (Bill) Strong, Robert Borders and Kenneth Stepp. Strong has held a professional appraiser designation from the Society of Real Estate Appraisers since the incorporation of REAG.

During the years 1986 and 1987, substantially all of REAG's appraisal work that was performed by persons REAG alleges to have been independent contractors was performed by Jack Carson, Richard C. (Chris) Borders, Ernest Helaire and Steve Ranney (collectively "Workers").

According to REAG's records, REAG paid the Workers the following amounts in 1986 and 1987:

| Worker | 1986 | 1987 |
|---|---|---|
| Jack Carson | $60,932.00 | $57,605.25 |
| Chris Borders | $23,847.75 | $39,922.50 |
| Ernest Helaire | $42,409.00 | $43,807.44 |
| Steve Ranney | $16,837.50 | $25,832.50 |

REAG was responsible for all of the negotiations with potential clients, including discussions involving fee quotes, work time frame and the specific assignment of jobs to the Workers. The work files relating to the appraisals were the property of REAG.

The Workers could utilize the resources of REAG in preparing appraisals for REAG. In addition to having access to REAG's offices and secretarial staff, the Workers had access to REAG's cost databases. The billing invoices for residential appraisals were sent to clients on REAG's letterhead and required payments to be made directly to REAG. The Workers were paid for their appraisal work regardless of whether REAG was paid by its client. REAG withheld a portion of Ranney's paycheck and held it in trust for Ranney as a savings plan.

REAG did not rely on a prior tax audit for its treatment of the Workers as independent contractors. REAG did not rely upon judicial precedent, published rulings, respective technical advice, or a letter ruling to REAG in connection with its decision not to treat its appraisers as employees.

In the event that the appraisers are found to be employees rather than independent contractors and REAG is found not to qualify for the safe harbor under Section 530 of the Revenue Act of 1978 for the years at issue, REAG owes the United States the following amounts, as of September 3, 1990, less its payment of $150, any amount attributable to inclusion in their calculation of payments to Jack Carson in excess of the FICA limit of $43,800 in 1987, and any amount collected by the IRS and applied to the liabilities at issue, adjusted to date for interest:

## FICA and Withholding Taxes

| QUARTER | TAX | INTEREST |
|---|---|---|
| 1st, 1986 | 2,265.48 | 1,282.86 |
| 2nd, 1986 | 6,121.79 | 3,235.84 |
| 3rd, 1986 | 2,546.02 | 1,258.48 |
| 4th, 1986 | 1,778.76 | 819.61 |
| 1st, 1987 | 3,449.38 | 1,480.05 |
| 2nd, 1987 | 5,188.36 | 2,059.91 |
| 3rd, 1987 | 3,620.06 | 1,319.65 |
| 4th, 1987 | 4,656.96 | 1,534.39 |
| TOTALS | $29,626.81 | $12,990.79 |

### Federal Unemployment Taxes

| QUARTER | TAX | INTEREST |
|---|---|---|
| 12–31–86 | 1,824.44 | 840.66 |
| 12–31–87 | 1,807.89 | 595.67 |
| TOTAL | $3,632.33 | $1,436.33 |

In the event REAG prevails, the United States owes it the amount of its $150 payment, plus any additional amounts paid or collected and applied to the liability at issue, and interest on these amounts, subject to the provisions of I.R.S. § 6402.

### IV. FINDINGS OF FACT

The Court hereby incorporates all of the above stipulations as findings of fact.

REAG is a real estate appraisal firm. It solicits and receives orders for appraisals from property owners, lenders, and others and engages other appraisers to perform some of the appraisals. The appraisers inspect the property; consult various records of sales and values of comparable properties; analyze income and expense data on income-producing property; and prepare a report determining an appraised value for such property.

REAG accrued substantial tax savings by classifying its nonowner appraisers as independent contractors for tax purposes during the years at issue, 1986–1987. Consequently, REAG did not have to pay: (1) Federal Insurance Contributions Act ("FICA") taxes, governed by sections 3101 to 3128 of the Internal Revenue Code, as amended (the "Code"); and (2) Federal Unemployment Tax Act ("FUTA") taxes, governed by sections 3301 to 3311 of the Code.

However, REAG did treat its owner-officers, who also conducted appraisals, as employees. The IRS audited REAG, determined that the full-time, non-owner appraisers should have properly been treated as employees subject to withholding and employment taxes, and asserted deficiencies.

All federal tax returns, including, in particular, Forms 1099, required to be filed by REAG with respect to each of its non-owner appraisers were filed on a basis consistent with REAG's treatment of each such appraiser as not being an employee from the inception of REAG's business through 1987.

John W. Strong, Robert E. Borders, and Kenneth A. Stepp (the "Owners") are the founders, only stockholders, officers, and managers of REAG. Each has been consistently treated by REAG as an employee from its inception. All other persons performing appraisal services for REAG have been consistently treated by REAG as independent contractors.

Each of the non-owner appraisers was not an employee of REAG, as that term is used in Sections 3121(d)(2), 3306(i) and 3401(c) of the Internal Revenue Code, under the common law rules applicable in determining the employer-employee relationship, both generally and, specifically, pursuant to application of the twenty common law factors set forth in Rev.Rul. 87–41, 1987–1 C.B. 296, in 1986 and 1987. *See In re Rasbury,* 141 B.R. 752, 759 n. 22 (N.D.Ala.1992). This finding is reinforced by the results of REAG's survey. This finding provides an independent ground for REAG to prevail in this action.

The non-owner appraisers were skilled professionals who carried out their appraisal assignments independently, worked when and where they chose with no set hours, and were compensated solely on a fee-split basis. These Workers received no inservice training from REAG and had to pay for their own continuing professional education. The Workers received no fringe benefits, except that they were permitted, at their own request and expense, to participate in REAG's health insurance program.

The non-owner appraisers determined the manner in which they carried out the appraisals that they performed. They also determined the bottom line figure as to the appraised value of the subject property, which was submitted to the client.

Robert Borders is a partner of REAG and was a credible witness. He testified that appraisals were reviewed on a very limited basis, but if errors were found, then the appraiser was instructed to correct the inaccuracy. REAG was very concerned with its reputation and strived to not let appraisals that were deemed to be unethical, unprofessional, or inaccurate be sent to clients. Although REAG retained the right to accept, reject, or modify an appraisal, if the individual appraiser was adamant, then REAG would be stuck with the appraisal, but the individual appraiser might not be used anymore. Of approximately 10,000 to 12,000 appraisals, substantially less than one percent (1%) had to be modified. Some larger clients required the appraisal to be reviewed.

The Workers were provided work space at REAG and were not assigned specific offices, but each generally used the same offices on a consistent basis. These offices might also be shared on a limited basis by the part-time independent contractors. At one point the Workers were asked to remove their personal effects from the offices so that they would not appear to be employees. The Workers could work at home if they chose. The Workers had keys to the building. During the pertinent time in question, the Workers were employed almost exclusively by REAG and generally worked over forty (40) hours weekly. The Workers were provided business cards from REAG, but other part-time workers were not. The IRS has not challenged the independent contractor status of the part-time appraisers. Some of these appraisers did not use the tools provided by REAG, but were paid the same way as the Workers on a fee-split basis.

The appraisers did not solicit their own clients. If an appraiser was terminated then REAG would get another appraiser to finish the job. REAG Workers were asked not to solicit REAG clients if the Workers left REAG. The Workers could hire their own assistants.

The most important aspect of the Workers' tasks was the appraisal. An important tool was the computer database subscriptions, which were provided by REAG as were plat maps of Oklahoma City. However, it was possible, although impractical, to make appraisals from court records as was done prior to the widespread use of computers in the industry. The Workers were trained and experienced professionals, and the most important tool of their trade was inside each appraiser's head. *See In re Rasbury,* 141 B.R. at 760 n. 22. The Workers provided their own cameras, measuring tape, and automobiles, but were paid a higher fee-split percentage for having to travel out of the market to conduct an appraisal and for expenses such as plat maps for out-of-market areas. In contrast, in at least one other firm, employees, as opposed to independent contractors, were permitted to use company vehicles to perform appraisals. REAG provided film and paid for developing. REAG provided telephones, and paid rent on the building. The Workers received business and personal phone messages at the REAG office, and received mail there as well. The completed appraisal forms were the property of REAG.

The Workers had signed contracts with REAG that evidence that they intended to be treated as independent contractors. The Workers were provided absolutely no paid fringe benefits like life insurance or sick or vacation leave. REAG paid the Workers semi-monthly based on a percentage of the fee charged to clients, and prior to the clients paying their bills. REAG had an errors and omissions policy that covered the Workers.

Steve Ranney testified that at the time he was hired he was told that he could not work for anyone else and believed that he would be fired if he did so. Nevertheless, Ranney testified that he did engage in outside employment during the time he worked for REAG. Ranney was provided a computer cost database service at his

other job although he was considered to be an independent contractor at that job. The Court did not find Ranney to be a completely credible witness. His answers lacked spontaneity. Ranney also owes the IRS money for delinquent taxes.

REAG treated the appraisers as independent contractors in reasonable reliance on a long-standing recognized practice of a significant segment of the appraisal industry. This finding provides a second independent ground for REAG to prevail on its claim. The survey conducted by Market Analysis Group establishes that a significant segment of the independent fee appraisal firms in the relevant geographic area treated their non-owner appraisers as independent contractors during the relevant period.

The relevant market is the non-owner appraisers who either work exclusively or almost exclusively for real estate appraisal firms in the Oklahoma City metropolitan area. The practices during 1981 to 1987 represent long-standing practices in the relevant industry.

Fifteen out of twenty, or 75%, of the survey respondents treated non-owner appraisers as independent contractors who either work exclusively or almost exclusively for real estate appraisal firms in the Oklahoma City metropolitan area. The percentage was slightly less if the employees were part-time—thirty out of forty-two, respondents or 71%. In the years 1981–82 the figures regarding independent contractors were higher: thirteen out of fifteen respondents or 87%.

The survey lacked responses from 64 firms:

| | |
|---|---|
| 37 | firms were in business in 1981–82, but were not in the 1990–91 phone book utilized for the survey |
| 7 | firms gave no response |
| 13 | firms were unable to be contacted |
| 7 | firms are no longer in business and were not surveyed |
| 64 | total firms were not included in the survey results. |

The Court finds that even if these 64 firms all treated their similarly situated workers as employees and not independent contractors, then plaintiff's statistics regarding independent contractors would still represent a significant portion of the relevant industry. However, it is more likely, and therefore the Court so finds, that the firms who did not participate in the survey treated their workers as independent contractors in the same proportion as those firms who responded to the survey.

The testimony of each of the Owners and witnesses, with the exception of Charles L. Monnot III of Market Analysis Group who did not testify on the subject, bolsters the finding that a significant segment of the independent fee appraisal firms in the relevant geographic area treated their non-owner appraisers as independent contractors during the relevant period. *See General Inv. Corp. v. United States*, 823 F.2d 337, 341 (9th Cir.1987). While a finding that the Workers were independent contractors under the common law factors is not dependent on the survey results, those results further reinforce the finding that the Workers were indeed independent contractors.

The personal observations of REAG's owners in conjunction with the application of the common law factors, as well as the survey results amply provide a reasonable basis for REAG treating the non-owner appraisers as independent contractors. This finding provides a third and separate basis for REAG to prevail in this action.

## VI. CONCLUSIONS OF LAW

Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1346(a)(1), venue is proper, and the Court has jurisdiction of the parties and subject matter. As pleaded in its complaint and in the final pretrial order, plaintiff's sole claim is for a refund of federal taxes.

■ The determination of the tax by the Commissioner is prima facie correct unless overcome by a sufficient quantum of evidence. *Welch v. Commissioner*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). The taxpayer has carried its burden of proof with respect to the issues before the Court on three separate grounds: 1) the Workers were common law independent contractors; 2) REAG reasonably relied on a longstanding recognized practice of a significant segment of the industry in which such individual was engaged; and 3) REAG otherwise had a reasonable basis for not treating the Workers as employees. *See generally, Marvel v. United States*, 719 F.2d 1507, 1516 (10th Cir.1983); *Beatty v. Halpin*, 267 F.2d 561, 564 (8th Cir.1959); *Chase Mfg., Inc. v. United States*, 446 F.Supp. 698, 701 (E.D.Mo.1978); *In re McAtee*, 115 B.R. 180, 184 (N.D.Iowa 1990); *In re Pearson*, 86 B.R. 179, 180 (Bankr. E.D.Mo.1988).

■ REAG has carried its burden of proof by a preponderance of the evidence on each of the three independent grounds for demonstrating a reasonable basis for its treatment of the Workers as independent contractors. However, REAG is only required to carry its burden of proof by a lesser standard. *See Critical Care Register[ed] Nursing, Inc. v. United States*, 776 F.Supp. 1025, 1028, 91–2 USTC ¶ 50,481, at 89,830–31 (E.D.Pa.1991) (rejecting IRS's argument that a preponderance of the evidence standard is necessary for the taxpayer to prove a reasonable basis and finding that the appropriate standard was lessened in conformity with Congress's intent of liberal construction for the taxpayer of the pertinent provision of the Tax Code); *see also General Inv. Corp. v. United States*, 823 F.2d 337, 340 (9th Cir.1987) ("The IRS has embraced Congress' liberal construction directive in its procedural guidelines for § 530."); *Ridgewell's Inc. v. United States*, 655 F.2d 1098, 1105, 228 Ct.Cl. 393 (1981) ("[T]he 'reasonable basis' test is to be construed liberally in favor of the taxpayer.") (citations omitted); *Darrell Harris, Inc. v. United States*, 770 F.Supp. 1492, 1498 (W.D.Okl.1991) (granting summary judgment to the IRS despite the "highly favorable standards" that Congress intended for the taxpayer); *In re McAtee*, 115 B.R. at 184 (employers exercising good faith were without question intended by Congress to be protected from adverse tax consequences). There is no practical objective method to carry out Congress's directive of liberally construing the applicable tax provision other than lowering the hurdle of the taxpayer's burden of proof. The Court therefore holds that a taxpayer need only show a substantial rational basis for its decision to treat the Workers as independent contractors in order to prevail.*

An employee is defined as "any individual who, under the usual common law rules

---

* The Court is aware of the seemingly amorphous nature of a standard of review that is quantitatively less than a preponderance of the evidence. However, logically, the burden on the taxpayer must be some quantum more than the IRS' prima facie showing of correctness, but less than a preponderance. Certainly if the evidence weighed out evenly, then under such a standard the taxpayer would still prevail.

While a change of the burden of proof standard to some measure less than a preponderance gives this Court apprehension of the unfamiliar, it is not inconsistent with reviews of agency decisions that are familiar. *See, e.g., United States v. Custodian of Records, S.W. Fertility Ctr.*, 743 F.Supp. 783, 787 (W.D.Okla.1990) (the Court's role in reviewing the enforcement of an administrative subpoena by the government is strictly limited to a determination of whether the Court's process would be abused). The only difference in this case is that the advantageous deference usually accorded only to the government agency is instead given to the taxpayer as is expressly directed by Congress under this circumstance. *Cf., e.g., FDIC v. Butler*, No. CIV–87–2553–P, 1988 U.S.Dist. LEXIS 18103, at *5 (W.D.Okla. Nov. 4, 1988) (holding that FDIC Receiver was entitled to the nearly impenetrable defenses of FDIC corporate).

The Court's conclusion is also congruent with established precedent in the lop-sided playing field of the tax laws where it is usually the IRS that is given more than an equal share of litigation advantages, such as trial and appellate counsel, as well as costs, paid at taxpayers' expense, starting with a prima facie showing of tax assessment correctness, the placement of the burden of proof on the taxpayer, and the limitation of judicial decisions as precedent over other taxpayers. *E.g., Welch v. Commissioner*, 290 U.S. at 115, 54 S.Ct. at 9; *Beatty v. Halpin*, 267 F.2d at 564; *Stern & Co. v. State Loan & Fin. Corp.*, 205 F.Supp. 702, 706 (D.Del.1962).

applicable in determining the employer-employee relationship, had the status of an employee." *See* I.R.C. §§ 3121(d)(2), 3306(i) & 3401(c).

The IRS has compiled a non-exclusive list of twenty factors that are used in the analysis of the status of workers: 1) instructions from the supervisor; 2) training; 3) integration; 4) services personally rendered; 5) hiring, supervision and paying assistants; 6) continuing relationship; 7) set hours of work; 8) mandatory full time employment; 9) working on employer's premises; 10) set order of tasks to be performed; 11) oral or written reports; 12) payment by the hour, week, or month; 13) payment of business and/or travel expenses; 14) furnishing of tools and materials; 15) significant investment; 16) realization of profit or loss; 17) working for more than one firm at a time; 18) making service available to general public; 19) right to discharge; and 20) right to terminate. Rev.Rul. 87–41, 1987–1 C.B. 296 (1986 & 1987).

Other factors might include industry practice or custom, the intent of the parties and how they viewed the relationship, the existence of written and signed independent contractor forms, and whether employee-type benefits were provided. *In re Rasbury*, 141 B.R. 752, 759 n. 14.

■ No one factor is controlling, nor is the list complete, and the degree of importance of each factor depends on the occupation and the factual context in which services are rendered. *United States v. Silk*, 331 U.S. 704, 716, 67 S.Ct. 1463, 1470, 91 L.Ed. 1757 (1947), *superseded by statute on other grounds as stated in Illinois Tri–Seal Prods., Inc. v. United States*, 353 F.2d 216, 224–28, 173 Ct.Cl. 499 (1965) (per curiam); *E & W Auto, Inc. v. United States*, No. 72–C–584, 75–1 USTC (CCH) ¶ 9295, at 86,639 (E.D.Wis. Jan. 22, 1975); *see also* Priv.Ltr.Rul. 9001033 (Oct. 10, 1989) (persuasive, but non-precedential). Although no one factor is controlling, employer control over the manner in which the work is performed is the fundamental test. *General Inv. Corp. v. United States*, 823 F.2d at 341; *American Consulting Corp.*

*v. United States*, 454 F.2d 473, 477 & n. 12 (3d Cir.1971); *In re Imholte*, 118 B.R. 103, 107 (Bankr.D.Alaska 1990).

■ The mere existence of the right to control and direct the *specific manner* in which an individual works towards the desired end product is the relevant factor for inquiry. Moreover, it is the ultimate right to control the details and not the actual exercise of such supervision that is determinative. *E.g., McGuire v. United States*, 349 F.2d 644, 646 (9th Cir.1965); *accord Service Trucking Co. v. United States*, 347 F.2d 671, 672 (4th Cir.1965).

■ REAG did not have the right to control and direct the Workers as to the result to be accomplished or as to the details, manner, and means by which that result was accomplished. *See In re Hamlin*, Nos. 23473–B–2 to 23475–B–2, 74–2 USTC (CCH) ¶ 9578, at 84,823 (D.Kan. July 11, 1974); *E & W Auto, Inc. v. United States*, 75–1 USTC (CCH) ¶ 9295, at 86,638–39. Even if REAG did have the right to control the result to be accomplished by the appraisers, then REAG did not have the right to control the means and methods used by the Workers in determining the appraisal, which is vital to a determination of independent contractor status under all of the circumstances of this case. *See Illinois Tri–Seal Prods., Inc. v. United States*, 353 F.2d at 228 & n. 20; *Critical Care Register[ed] Nursing, Inc. v. United States*, 776 F.Supp. at 1029, 91–2 USTC ¶ 50,481, at 89,831 (citing Treas.Reg. § 31.-3121(d)–1(c) (26 C.F.R. § 31.3121(d)–1(c))); *American Institute of Family Relations v. United States*, No. CV 72–1402–WMB, 79–1 USTC (CCH) ¶ 9364, at 86,878 (C.D.Cal. Feb. 22, 1979); *Standard Life & Accident Ins. Co. v. United States*, No. CIV–74–150–C, 75–1 USTC (CCH) ¶ 9352, at 86,841 (W.D.Okla. Feb. 27, 1975) (Chandler, J.).

Section 530(a)(1) of the Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763, provides that an "individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for treating such individual as an employee." Section 530(a)(2) further provides:

For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) Judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayers;

(B) A past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) Long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

I.R.C. § 3401 note. Of the three expressed safe harbors, REAG has relied only on the long-standing recognized practice of a significant segment of the relevant industry in subpart C.

In order for the safe harbor to apply, the following conditions must be satisfied: (a) at all times since January 1, 1978 through 1987, REAG must not have treated any worker holding a position substantially similar to the position of the Workers at issue as an employee; (b) REAG must not have treated any of the Workers at issue as an employee at any time; (c) all federal tax returns, including information returns, required to be filed by the taxpayer with respect to such Workers for such period have been filed on a basis consistent with REAG's treatment of such Workers as not being employees; and (d) REAG had a reasonable basis for not treating the Workers at issue as employees. *Id.* REAG has met each of these conditions.

■ The survey admitted into evidence was trustworthy and was properly conducted according to generally accepted survey principles. The survey demonstrates that a significant segment of the industry has had a long-standing recognized practice of treating non-owner appraisers as independent contractors. *See generally, United States v. Generes,* 405 U.S. 93, 105–06, 92 S.Ct. 827, 834, 31 L.Ed.2d 62 (1972) (noting that "significant" is distinctly less than "dominant"). The survey is the only practical manner for REAG to meet its proof on this issue and is admitted over the United States' hearsay objection. *See Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513, 522–23 & nn. 5–6 (10th Cir.1987); *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.,* 533 F.2d 510, 520 & n. 16 (10th Cir.1976); *Standard Oil Co. v. Standard Oil Co.,* 252 F.2d 65, 75 (10th Cir.1958); Fed.R.Evid. 803(24). The survey results were bolstered by the testimony of the appraiser witnesses. The United States called no expert witness to challenge the survey. The United States neither conducted its own survey, nor presented persuasive evidence of employment practices that cast a shadow of a doubt on REAG's evidence. *See General Inv. Corp. v. United States,* 823 F.2d at 341. While there is no burden on the United States to come forward with any evidence to the contrary, such a failure to do so only substantiates the taxpayer's position that its actions were indeed reasonable.

■ And, a taxpayer who fails to meet any of the above-mentioned three "safe havens may nevertheless demonstrate, in some other manner, a reasonable basis for not treating the individual as an employee." Rev.Rul. 83–152 (citing H.R.Rep. No. 95–1748, 95th Cong., 2nd Sess. 5 (1978), 1978–3 C.B. (Vol. 1) 629, 633); Rev.Proc. 78–35, § 3.01, 1978–2 C.B. 536. This reasonable basis is to be liberally construed in favor of the taxpayer. *General Inv. Corp. v. United States,* 823 F.2d at 340. "Without question, Congress intended to protect employers who exercised good faith in determining whether their workers were employees or independent contractors." *Id.* REAG has demonstrated a reasonable basis for not treating the appraisers as employees under the common law rules applicable to determining the employer-employee relationship, as well as the other circumstances of this case. *See Illinois Tri–Seal Prods., Inc. v. United States,* 353 F.2d at 218 (in close cases the view of the workers as to their own status is very significant).

Finally, the Court rejects the United States' argument that REAG is precluded from treating the non-owner appraisers as independent contractors because the corporation treated the owner-officer appraisers as employees. The owners have managerial control and ownership of the corporation and perform substantial duties and therefore are substantially distinct from the non-owner appraisers who are merely workers for the corporation. The Court concludes that these two groups of workers are therefore not similarly situated. *See Spicer Accounting, Inc. v. United States*, 918 F.2d 90, 94 (9th Cir.1990) (officer who performs substantial services for corporation is an employee and claim of independent contractor was specifically rejected because taxpayer was provided supplies and place to work, work was exclusive, and services were integral to corporation); *Texas Carbonate Co. v. Phinney*, 307 F.2d 289, 293 (5th Cir.) (Taxpayer-officer held to be employee where "[h]e engaged in no business activity for others, and his work for the company was in no sense incidental to a separate or independent business or profession."), *cert. denied*, 371 U.S. 940, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962); *Darrell Harris, Inc. v. United States*, 770 F.Supp. at 1496–97 (holding that a sole shareholder, director, and president of an accounting corporation was considered an employee instead of an independent contractor for federal employment tax law purposes because he performed substantial services for the corporation); *C.D. Ulrich, Ltd. v. United States*, 692 F.Supp. 1053, 1055 (D.Minn. 1988) (a corporate officer is to be treated as an employee if more than minor services are rendered).

## V. CONCLUSION

For the reasons discussed herein, the Court finds, and holds in favor of plaintiff REAG, Inc. on both plaintiff's claim against the United States of America, and on defendant's counter-claim.

IT IS SO ORDERED.