Paul D. McCLELLAN d/b/a Sterling
Floors and Kitchens, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

No. 94–CV–70799–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 12, 1995.

Wallace H. Glendening, Gary R. Glenn,
Jaffe, Raitt, Detroit, Michigan, for plaintiff.

Doris D. Coles, Department of Justice, Tax
Division, Washington, DC, for defendant.

## OPINION AND ORDER REGARDING PLAINTIFF'S REQUEST FOR COSTS AND ATTORNEY FEES

ROSEN, District Judge.

## I. INTRODUCTION

On March 2, 1994, Plaintiff/Counterclaim–Defendant Paul D. McClellan ("Plaintiff") filed a Complaint for Tax Refund, seeking refund of $200, plus interest, costs and attorney fees for employment taxes[1] erroneously assessed and collected. The Defendant/Counterclaim–Plaintiff United States of America ("Defendant") filed an amended answer and counterclaim on June 27, 1994. In addition to denying liability for the requested refund, Defendant sought $85,617, plus statutory interest and additions, for employment taxes allegedly owed by Plaintiff for tax years 1987, 1988, 1989 and 1990. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1346(a)(1) and (c).

Plaintiff claims, and Defendant now admits, that he is entitled to relief from employment tax liability pursuant to § 530(a)(2)(C) of the Internal Revenue Act of 1978, Pub.L.No. 95–600, 92 Stat. 2763, 2885–2886.[2] That section provides relief for taxpayers who fail to pay employment taxes when their treatment of workers as independent contractors is based on a "long-standing recognized practice of a significant segment of the industry...."

After completion of discovery, Plaintiff filed a motion for summary judgment and request for costs and attorney fees. In its response, Defendant concedes Plaintiff's motion for summary judgment—admitting that Plaintiff's request for refund should be granted and that Plaintiff does not owe an additional $85,617 in taxes—but opposes Plaintiff's request for costs and fees.

Accordingly, the only remaining issue before this Court is whether Plaintiff is entitled to costs and attorney fees pursuant to 26 U.S.C. § 7430. After reviewing the papers filed by the parties and considering arguments made by their counsel at a hearing held on February 23, 1995, and for the reasons stated herein, the Court finds that Plaintiff is entitled to costs and fees.

## II. FACTUAL BACKGROUND

Plaintiff has been sole proprietor of a small business known as Sterling Floors and Kitchens since 1978. He installs hard surface flooring (such as linoleum, vinyl and ceramic tile) in homes in the Detroit metropolitan area. Generally, Plaintiff works as an independent contractor for floor surface retailers, installing products they have sold. Plaintiff does much of the work himself, but also subcontracts with other installers for some assignments. Prior to an Internal Revenue Service ("IRS") audit, Plaintiff treated these installers as independent contractors, rather than employees of his business. Before that time, he "[n]ever knew there was such a thing [as an employee-installer]." (Deposition of Paul D. McClellan, November 28, 1994, p. 40).

In 1991 and 1992, the IRS made assessments against Plaintiff for employment taxes allegedly due for tax years 1987, 1988, 1989 and 1990. According to the agency, Plaintiff should have treated his sub-contractors as employees. This conclusion was based on the auditor's application of a twenty-factor common law test designed to distinguish between employees and independent contractors.[3] After receiving the assessment, Plain-

---

1. Throughout this opinion, the term "employment taxes" refers to taxes payable pursuant to the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. § 3101–3128, and the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. § 3301–3311.

2. The text of § 530 appears in the notes following 26 U.S.C. § 3401. The section has not been codified.

3. The term "employee" is defined by the Internal Revenue Code to include "any individual who,

under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." 26 U.S.C. § 3121(d)(2). The agency has developed a set of twenty factors to use as a guideline for determining employee status. "These factors are a product of the common law, beginning with *United States v. Silk*, 331 U.S. 704, 716, 67 S.Ct. 1463, 1469–70, 91 L.Ed. 1757 (1947), and are discussed in Rev.Rul. 87–41, 1987–1 C.B. 296." *In re Rasbury*, 24 F.3d 159, 162 (11th Cir.1994).

tiff filed a timely protest with the IRS. The protest was ultimately rejected by the IRS Appeals Office. Subsequently, Plaintiff paid the taxes, penalties and interest due for one installer for the last quarter of 1990 ($200), and simultaneously filed a request for refund with the IRS. That request was denied by letter dated October 5, 1992.

Before Plaintiff's protest was rejected by the IRS, Plaintiff exchanged information with and attended a conference held by IRS Appeals Officer Noula Mikhail. Plaintiff argued that in his experience hard surface flooring installers in the Detroit area are invariably treated as independent contractors, and that he relied on this practice. In support of his claim, he personally collected data from area businesses engaged in the installation of hard surface flooring. He telephoned each company, posed as an installer looking for work, and asked whether he would be treated as an employee or independent contractor. Of the 41 companies Plaintiff contacted, 40 indicated that they treat their installers as independent contractors. Plaintiff presented this information to Officer Mikhail in the form of a chart that included each company's name, address and contact person. The Appeals Office received the information with a letter from Plaintiff's attorney on November 27, 1991. In the letter, counsel specifically asked for relief from tax liability based on the provisions of § 530 of the Internal Revenue Act of 1978. *See* Defendant's Response, Exhibit A (letter from Gary R. Glenn, Plaintiff's counsel, to Noula Mikhail, dated November 12, 1991). Mikhail responded to this request as follows:

> Your client may have a point but the survey lacks credibility. There was no information provided by the people he contacted. A letter signed by a responsible person from the business indicating:
>
> —Total number of workers.
>
> —Number of installers (residential and/or commercial), how they are treated.
>
> —Similarity and difference between their work conditions and your client i[n] considering the 20 common-law factors.
>
> —If installers are floor or carpet or both.

Defendant's Response, Exhibit A (letter from Noula Mikhail to Gary R. Glenn, dated December 24, 1991).

Subsequently, Plaintiff made some of the corrections requested by Mikhail. He added information on the number of hard surface flooring installers used by each company, along with some miscellaneous comments (such as number of business locations, and other types of services offered by each business). Plaintiff's attorney sent the revised survey to Mikhail along with a letter dated January 17, 1992. In the letter, Plaintiff's counsel argued that Mikhail's request for a verified analysis of each competitor's relationship with its installers based on the twenty common law factors is too burdensome. He stated:

> I do not see how your request can possibly be termed reasonable. The effort and expense required to produce such a document would be astronomical and would greatly exceed any potential tax liability from the taxpayer. In addition, these businesses are competitors of Mr. McClellan. They may hesitate before they assist a competitor to this extent.

(Letter from Gary R. Glenn to Noula Mikhail, dated January 17, 1992, p. 5).[4] Counsel made a similar argument to the IRS District Director. *See* Defendant's Response, Exhibit C (letter from Gary R. Glenn to John Hummel, dated February 20, 1992). Furthermore, he encouraged Mikhail "simply to call the contact person listed on the chart and ask a few questions regarding their treatment of the workers. Do not simply dismiss our survey as lacking credibility if you have not tried to verify its contents. Do not place an impossible burden on us." (Letter from Glenn to Mikhail, January 17, 1992, p. 11).

## III. ANALYSIS

### A. STANDARDS GOVERNING AWARD OF COSTS AND FEES IN TAX REFUND CASES: 26 U.S.C. § 7430.

■ Title 26 U.S.C. § 7430(a) authorizes the award of costs and attorney fees to the

---

4. A copy of this letter was submitted to the Court as an exhibit by letter dated February 24, 1995 from Plaintiff's counsel. (*See* docket entry number 28).

"prevailing party" in administrative and court proceedings brought in connection with the collection or refund of taxes.[5] In addition to other requirements not at issue here,[6] in order to be considered a "prevailing party," a taxpayer must "establish[ ] that the position of the United States in the proceeding was not substantially justified...." 26 U.S.C. § 7430(c)(4)(A)(i). "Substantially justified" has been defined "as 'justified to a degree that could satisfy a reasonable person' or having a 'reasonable basis both in law and fact.'" *William L. Comer Family Equity Pure Trust v. Commissioner*, 958 F.2d 136, 139 (6th Cir.1992) (quoting *Pierce v. Underwood*, 487 U.S. 552, 563–65, 108 S.Ct. 2541, 2549–2550, 101 L.Ed.2d 490 (1988)). It does not mean " 'justified to a high degree,' but rather 'justified in substance or in the main'...." *Pierce*, 487 U.S. at 565, 108 S.Ct. at 2550. A position "can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct...." *Id.*, 487 U.S. at 566 n. 2, 108 S.Ct. at 2550 n. 2.

■ The burden is on the taxpayer to establish lack of substantial justification. *Kenagy v. United States*, 942 F.2d 459 (8th Cir.1991) (rejecting argument that 1988 amendments to § 7430 had effect of placing burden on government); *Goodwin v. United States*, 935 F.2d 1061 (9th Cir.1991); *Bode v. United States*, 919 F.2d 1044 (5th Cir.1990); *Smith v. United States*, 850 F.2d 242, 245 (5th Cir.1988); *Powell v. Commissioner*, 791 F.2d 385, 390 (5th Cir.1986). And, even if Plaintiff satisfies the statutory requirements, an award is not mandatory. The statute "authorizes, rather than commands, the court to make an award ... for reasonable litigation costs." *Zinniel v. Commissioner*, 883 F.2d 1350, 1355 (7th Cir.1989), *cert denied*, 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990).

## B. *EMPLOYMENT TAX RELIEF: § 530 OF THE INTERNAL REVENUE ACT OF 1978.*

Defendant now concedes that Plaintiff is entitled to relief from tax liability for his failure to treat installers working for him as employees.[7] This concession is based upon application of § 530 of the Internal Revenue Act of 1978. Some familiarity with § 530 is required in order to determine whether the position taken by Defendant at the outset of this litigation was substantially justified.

As originally enacted[8], the statute provided interim relief to employers who had a "reasonable basis" for treating their workers as independent contractors. "Without question, Congress intended to protect employers who exercised good faith in determining whether their workers were employees or independent contractors." *General Investment Corporation v. United States*, 823 F.2d 337, 340 (9th Cir.1987). The motivating factors behind enactment of § 530 were described in a report issued by the Joint Committee on Taxation in 1979:

> In the late 1960s, the IRS increased its enforcement of the employment tax laws. Previously, employment tax audits had been superficial or sporadic and only occasionally entailed examination of employ-

---

**5.** 26 U.S.C. § 7430(a) states:

> In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund or any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—
> (1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and
> (2) reasonable litigation costs incurred in connection with such court proceedings.

**6.** A "prevailing party" must "substantially prevail[ ] with respect to the amount in controversy,

or ... with respect to the most significant issue or set of issues presented," and establish that his net worth does not exceed certain caps. 26 U.S.C. § 7430(c)(4)(A)(ii) and (iii).

**7.** Defendant does not concede that its application of the twenty-factor common law test was in error. Rather, the agency continues to maintain that the installers should be treated as employees as opposed to independent contractors.

**8.** When enacted, the provision protected employers from tax liability for periods prior to January 1, 1980. The provisions of § 530 were subsequently extended indefinitely by § 269(c) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324 (Sept. 3, 1982).

ment status issues. Many controversies developed between taxpayers and the Service about whether individuals treated as independent contractors should be reclassified as employees....

\* \* \* \* \* \*

Many taxpayers have complained that proposed reclassifications involve a change of position by the Internal Revenue Service in interpreting how the common law rules apply to their workers or industry.... Before the 1970s ... most audits did not focus on employment tax status determinations; so most taxpayers relied on their own judgment, industry practice, or, in a few industries, published Revenue Rulings.

\* \* \* \* \* \*

The Congress believes that it is appropriate to provide interim relief for taxpayers who are involved in employment tax status controversies with the Internal Revenue Service, and who potentially face large assessments, as a result of the Service's proposed reclassifications of workers, until the Congress has adequate time to resolve the many complex issues involved in this area.

Joint Committee on Taxation, 95th Cong., 2d Sess., General Explanation of the Revenue Act of 1978 300–01 (Joint Comm. Print 1979); *see also*, S.Rep. No. 95–1263, 95th Cong., 2d Sess. 209–10 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 6761, 6972–73; H.R.Rep. No. 95–1748, 95th Cong., 2d Sess. 3–4 (1978).

Section 530 states, in relevant part:

(1) If—(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period ... (B) ... then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

\* \* \* \* \* \*

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

§ 530(a)(1) and (2). The legislative history indicates that "reasonable basis" should be "construed liberally in favor of taxpayers." H.R.Rep. No. 95–1748, 95th Cong., 2d Sess. 5, (1978); *see also General Inv. Corp., supra*, 823 F.2d at 340; *Ridgewell's Inc. v. United States*, 655 F.2d 1098, 1105, 228 Ct.Cl. 393 (1981); *Critical Care Register Nursing, Inc. v. United States*, 776 F.Supp. 1025 (E.D.Pa. 1991). And at least one court has held that a taxpayer's burden in establishing that it falls within the provisions of § 530 is less than a preponderance of the evidence, *REAG, Inc. v. United States*, 801 F.Supp. 494 (W.D.Okla. 1992):

There is no practical objective method to carry out Congress's directive of liberally construing the applicable tax provision other than lowering the hurdle of the taxpayer's burden of proof. The Court therefore holds that a taxpayer need only show a substantial rational basis for its decision to treat the Workers as independent contractors in order to prevail.

*Id.* at 500 (footnote omitted).

## C. *THE PARTIES' ARGUMENTS.*

Plaintiff argues that the IRS placed too great of a burden on him to prove reliance on long-standing industry practice.[9] He be-

---

**9.** Although Plaintiff's motion for summary judgment relies on subsection 530(a)(2)(C), § 530 does not limit taxpayer claims for relief to the specific situations described in subsection (2). Rather, an individual "shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee." § 530(a)(1)(B). Reasonable bases other than those listed in subsection (2) are pos-

sible. And indeed, Plaintiff asserted an alternative ground for relief before the agency. After arguing that the 20–factor common law test had been improperly applied, and that if it had been applied correctly, the IRS auditor would have concluded that installers working for him were in fact independent contractors, Plaintiff argued that even if the 20–factor test were to ultimately lead to the conclusion that the installers were

lieves that once he raised the exception and presented his survey of industry practice, the government should have taken steps to verify his claims, especially in light of the fact that the government had no evidence to the contrary.[10]

Defendant argues that its delay in accepting Plaintiff's § 530 defense is due to Plaintiff's failure to supply the agency with credible evidence of his reliance on industry practice. Plaintiff's motion for summary judgment included affidavits from others in the industry describing their treatment of installers. This, Defendant argues, is the type of independent verification requested by Appeals Officer Mikhail that Plaintiff should have presented to the agency. Furthermore, the survey information prepared by plaintiff described industry practice as it existed at the time. Plaintiff did not provide the agency with any direct evidence of practice during the relevant tax years, nor of his reliance on it.

### D. PLAINTIFF IS ENTITLED TO AN AWARD OF COSTS AND ATTORNEY FEES.

Whether or not Defendant's position was "substantially justified" depends on answers to the following related questions: To what extent must a taxpayer document reliance on industry practice to be granted § 530(a)(2)(C) relief? And, to what extent is the IRS obligated to actively investigate § 530 claims? The language of the statute provides no direct answers to these questions of interpretation. Accordingly, consideration of the statute's purpose and context is appropriate.

 Congress' failure to codify § 530 does not indicate that it must assume less importance than other tax provisions. Indeed, Congress enacted the statute in order to curb over-zealous IRS enforcement of the established tax code. More importantly, neither the statute's language nor its history indicate that the IRS may ignore the existence of § 530 and consider application of the employment tax laws in isolation absent assertion of a § 530 defense by the taxpayer. Indeed, the statute specifically states that "[i]f ... the taxpayer did not treat an individual as an employee ... *the individual shall be deemed not to be an employee* unless the taxpayer had no reasonable basis for not treating such individual as an employee." § 530(a)(1) (emphasis added). Thus, Congress has instructed the IRS to accept presumptively the taxpayer's classification of the individual as a non-employee unless there is no reasonable basis for doing so.

This language provides no support for Defendant's implicit assertion that taxpayers must bear the entire burden of establishing reasonableness. Indeed, if forced to choose between one of two extremes, the more likely interpretation would be that the IRS must bear the burden of establishing lack of reasonableness. However, a choice between these two extremes is not required. Although the agency may not presume that taxpayer treatment of workers as independent contractors is unreasonable absent proof of the contrary, it would be impractical to require the IRS to investigate a possible § 530 defense in every instance, regardless of whether the taxpayer has come forward with information supporting such a defense. In most cases, the IRS would not know where to begin an investigation unless the taxpayer first asserted the basis for his belief that his practice was reasonable.[11]

---

employees, the issues were so close that Plaintiff's treatment of them as independent contractors was reasonable within the meaning of § 530(a)(1). Other courts have recognized this as a legitimate ground for § 530 relief. *Critical Care Register Nursing, Inc. v. United States*, 776 F.Supp. 1025, 1028 (E.D.Pa.1991); *REAG, Inc. v. United States*, 801 F.Supp. 494, 502 (W.D.Okl. 1992).

**10.** When asked to admit that it was "not aware of any company or business entity in the Detroit Metropolitan Area which installs resilient or hard

surface flooring ... which treats its installers as employees and not as independent contractors," Defendant responded: "The United States presently is without knowledge or information sufficient either to admit or to deny plaintiff's Request for Admission...." (United States' Response to Plaintiff's First Discovery Requests to Defendant, p. 23).

**11.** There may, however, be cases involving a job classification or area of employment within an industry where a practice is so prevalent, and the IRS has so much experience with it, that the IRS

Accordingly, the most logical interpretation of § 530 is that Congress intended taxpayers and the IRS to work together to establish reasonableness. This joint responsibility can be allocated most appropriately by requiring the taxpayer to come forward with an explanation and enough evidence to establish *prima facie* grounds for a finding of reasonableness. However, as reflected in the statute, this threshold burden is relatively low, and can be met with any reasonable showing. Once the taxpayer has made this *prima facie* showing, the burden then shifts to the IRS to verify or refute the taxpayer's explanation.

Although each case will necessarily depend on its unique facts to determine whether the taxpayer has met the initial burden of establishing *prima facie* reasonableness, in this case this Court has no difficulty whatsoever in finding that Plaintiff came forward with more than sufficient information to shift the burden to the IRS. The taxpayer here came forward, on at least two occasions, with detailed surveys and supplementary materials, including names and addresses of others in the industry whose practices supported the survey results. The IRS responded by refusing to look into Plaintiff's survey of industry practice, and by placing an unrealistic burden upon the taxpayer to provide detailed verification of the survey results. Such a response turns on its head the statutory presumption in favor of the taxpayer. Thus, the agency's failure here to take any steps to investigate the taxpayer's submission was clearly without justification, and fell far short of meeting the agency burden of verifying or refuting the taxpayer's explanation. Indeed, the IRS response here borders on bureaucratic arrogance and bad faith.

Accordingly, Defendant's decision to oppose Plaintiff's claim for a tax refund in the instant matter was also without justification, and the government should be assessed liability for Plaintiff's costs and fees pursuant to § 7430. In other contexts, courts have recognized that inadequate investigation by

the IRS may be grounds for § 7430 relief. *See United States v. Sam Ellis Stores, Inc.,* 768 F.Supp. 286, 289 (S.D.Cal.1991) ("combination of the Government's 'abbreviated' investigation prior to filing this suit, along with the subsequent voluntary dismissal"); *Penner v. United States,* 584 F.Supp. 1582 (S.D.Fla.1984) (government failed to ask for information that would explain taxpayer's large bank accounts); *Prudential–Bache Securities, Inc. v. Tranakos,* 593 F.Supp. 783, 786 (N.D.Ga.1984) (government made no effort to discover evidence to controvert party's sworn statement that he was not the beneficial owner of securities held in his name); *Golden v. United States,* 86–2 U.S.Tax.Cas. ¶ 9626, 58 A.F.T.R.2d 86–5826, 1986 WL 10079 (W.D.Mo.1986) (government failed to reasonably investigate the truth of claims made by former employee of motel that would exonerate him from liability for failure to pay employment taxes on behalf of motel owner); *Frisch v. Commissioner of Internal Revenue,* 87 T.C. 838, 841, 1986 WL 22038 (1986) (given discrepancy between IRS and taxpayer appraisals of artwork, IRS should have conducted further investigation of work's value; Commissioner's "failure to investigate petitioner's claims or to re-evaluate his own position as new facts came to light was unreasonable"); *Sher v. Commissioner of Internal Revenue,* 861 F.2d 131 (5th Cir.1988) (although government was substantially justified in its failure to investigate, "[r]eliance on IRS files alone would not have been sufficient if the petition and the documents in the file demonstrated the need for further investigation"); *Estate of Johnson v. Commissioner of Internal Revenue,* 985 F.2d 1315 (5th Cir.1993) (government failed to examine all of the information it had in its possession).

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment be granted in its entirety, and that Plaintiff be awarded costs and attorney fees associated with this litigation. Accordingly, Plaintiff is ordered to submit a

can presumptively be charged with knowledge of this industry practice without any burden being

placed upon the taxpayer.

verified Bill of Costs and Fees to this Court by September 29, 1995. Defendant will have until October 13 to file any objections it might have to the particulars of that Bill.

SO ORDERED.