CRITICAL CARE REGISTER NURSING, INC.,
Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Civ. A. No. 89–7640.

United States District Court,
E.D. Pennsylvania.

Sept. 19, 1991.

**1026**

Jeffrey Cooper, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for plaintiff.

Joseph F. Minni, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Critical Care Registered Nursing, Inc. ("Critical Care") commenced this action against defendants United States of America; Fred Goldberg, Commissioner of the Internal Revenue Service; and J. Robert Starkey, Regional Commissioner of the Internal Revenue Service (referred to hereinafter as "United States") to recover federal employment taxes assessed by the Internal Revenue Service ("IRS") and paid by Critical Care for the taxable years 1982 and 1983. The United States filed a counterclaim for additional taxes it claimed were owed by Critical Care. The case was tried to a jury which, after a four day trial, found for Critical Care. Judgment was entered for Critical Care in the amount of $5,188.00, pursuant to stipulation by the parties. Judgment was also entered against the United States on its counterclaim.

The United States has now filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. For the reasons stated below, this Court will deny both motions of defendant United States.

Plaintiff Critical Care is a business which provides specialized registered nurses to hospitals in need of temporary additional staffing for emergency rooms and intensive care units. Critical Care contracts with hospitals to supply nurses according the hospitals' requests for particular shifts, and contracts with nurses to work those shifts. Evidence at trial established that Critical Care does not prescribe for the nurses the work they are to perform at the hospitals, nor does it furnish uniforms, transportation, journals, sick pay, vacation pay, pensions, bonuses, insurance or licenses to its nurses. In addition to being registered with Critical Care, the nurses are permitted to be also employed directly by hospitals and/or be registered with other similar nursing agencies or registries. Further, the nurses may choose when, where and how often they work. Critical Care contends, and the jury found at trial, that it properly treated its nurses as independent contractors, and therefore was not liable for the employment taxes it had paid to the government but was, instead, entitled to a refund.

The United States now asserts in its motion for judgment notwithstanding the verdict or, in the alternative a new trial, that Critical Care is liable as a matter of law for the federal employment taxes assessed by the IRS. Asserting a presumed validity of the IRS assessments, the United States claims that Critical Care failed to produce evidence sufficient to overcome this presumed validity and thus, contrary to the jury findings at trial, failed to meet its burden of proof.

This case is governed by Section 530 of the Revenue Act of 1978, Pub.L. 95–600, 92

Stat. 2763, 2885–86 (November 6, 1978) (codified at 26 U.S.C. § 3401 note (1982) (as amended). Section 530(a)(1) provides:

Controversies Involving Whether Individuals are Employees for Purposes of Employment Taxes

(a) Termination of certain employment tax liability.—

(1) In general. —If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then for purposes of applying such taxes for such period with respect to the taxpayer, *the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.*

Section 530(a)(1) (emphasis added).

In addition, Section 530(a)(2) provides three statutory 'safe havens' for the taxpayer. Pertinent to the present case, it states in part:

(2) * * * a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee * * * if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

*   *   *   *   *   *

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

Section 530(a)(2).

■ Even the "safe havens" of Section 530(a)(2), however, are not the exclusive ways of meeting the reasonable basis requirement: "A taxpayer who can demonstrate a reasonable basis for the treatment of an individual in some other manner also is entitled to termination of employment tax liabilities." H.R.Rep. No. 95–1748, 95th Cong., 2d Sess. 3–4 (1978) (referred to hereinafter as "House Report"). As also stated in Rev.Proc. 85–18, 1 C.B. 518, Sec. 3.01(C) (1985) (referred to hereinafter as "Rev.Proc. 85–18"), "A taxpayer who fails to meet any of the three 'safe havens' may nevertheless be entitled to relief if the taxpayer can demonstrate, in some other manner, a reasonable basis for not treating the individual as an employee."

Thus, the Congressional mandate is clear that there are several avenues by which a taxpayer may prove, under Section 530, that it had a reasonable basis for not treating a worker as an employee.

Further, according to the House Report, Section 530 was intended "[g]enerally, [to] grant[ ] relief if a taxpayer had any reasonable basis for treating its workers as other than employees. The committee intends that this reasonable basis requirement be construed liberally in favor of the taxpayers." House Report at 631–32. As also stated in Rev.Proc. 85–18 Sec. 3.01(c), "[The House Report] indicated that 'reasonable basis' should be construed liberally in favor of the taxpayer." Liberal construction in favor of the taxpayer was deemed necessary to provide interim relief to taxpayers involved in employment tax status controversies, many of which found retroactive tax liability through the reclassification of workers as employees who had previously been classified as independent contractors. Until Congress could develop a comprehensive, permanent solution to the many complex issues involved, the House Report stated, the reasonable basis requirement under Section 530 was to be construed "liberally" and was to be granted "if a taxpayer had any reasonable basis for treating its workers as other than employees." House Report at 631–32.

Congress has not, to date, passed a comprehensive Act to supersede Section 530. Congress has, instead, extended the provisions of Section 530 indefinitely, through the provisions of the Tax Equity and Fiscal Responsibility Act of 1982, 1982–2 C.B. 462, 536. Under this Act, according to Revenue Procedures issued by the IRS, Section 530 as amended continues to provide that "if, for purposes of the employment taxes

* * *, a taxpayer did not treat an individual as an employee for any period, then the individual will be deemed not to be an employee for that period, unless the taxpayer had no reasonable basis for not treating the individual as an employee." Rev. Proc. 85–18, Sec. 2.01.

The United States, in its motion for judgment notwithstanding the verdict or, in the alternative a new trial, contends that Critical Care failed to produce evidence at trial sufficient to overcome a presumed validity of the IRS assessments, and therefore failed to meet its burden of proof. This Court has considered this statement as an assertion by the United States that, contrary to the jury's finding, Critical Care did not carry its burden of establishing by a preponderance of the evidence that it had a reasonable basis, pursuant to Section 530, for not treating its nurses as employees.

■ Congress has not defined "reasonable basis" for the purposes of Section 530(a)(1), which is the section of general applicability. See Section 530(a)(1), supra. After analyzing the statute and legislative history, however, this Court has concluded that, for purposes of Section 530(a)(1), a taxpayer may establish that it had a reasonable basis for not treating its workers as employees by utilizing the traditional common law rules for determining whether workers are employees or independent contractors. However, under the Congressional mandate of Section 530, the taxpayer need only show that, under the common law rules, its treatment of its workers was reasonable. That is, under Section 530, the taxpayer's burden has been lessened and the taxpayer need only show a reasonable basis for not treating its workers as employees under the traditional common law rules.

This conclusion is based on the fact that relief under Section 530, according to the House Report, was deemed necessary when strict enforcement of the common law rules resulted in the reclassifications of workers and the liability of taxpayers for employment taxes that had not been previously withheld and paid to the Treasury. Before this time, audits had been superficial or sporadic, and had only occasionally entailed examination of employment status issues; most taxpayers had relied on "their own judgment, industry practice, or, in a few industries, published Revenue Rulings." House Report at 632. Liability, many taxpayers insisted, was due to a change in position by the IRS through the strict application of the traditional common law factors. Id. Section 530, thus, was intended to be

> an interim solution for controversies between the Internal Revenue Service and taxpayers involving whether certain individuals are employees *under interpretations of the common law* by * * * (2) allowing taxpayers who had a reasonable basis for not treating workers as employees *in the past, to continue such treatment* without incurring employment tax liabilities * * * while the committee works on a comprehensive solution, * * *.

House Report at 632 (emphasis added). Relief under Section 530, then, was intended to allow taxpayers who had had a reasonable basis "in the past," that is, under the traditional common law rules as existed before the increased enforcement by IRS, for the tax treatment of their workers to continue such treatment until Congress had resolved the many issues involved. See House Report at 631, and House Report at 632, quoted supra. Relief, further, was to be granted if a taxpayer had "any reasonable basis for treating workers as other than employees," id. at 633, and this reasonable basis requirement was to be "construed liberally in favor of the taxpayers." Id. This Court therefore concludes that "reasonable basis" for the purposes of Section 530(a)(1) may be established by a showing by the taxpayer that, under the traditional common law rules, it had a reasonable basis for not treating its workers as employees.

In determining whether plaintiff Critical Care had a reasonable basis for not treating its nurses as employees, this Court instructed the jury that it was to consider two issues. The first was whether Critical Care had a reasonable basis for not treat-

ing its nurses as employees under the applicable traditional common law factors for determining whether a worker is an employee or independent contractor, of which the most important is the right to control, though no one factor is controlling. *American Consulting Corp. v. United States*, 454 F.2d 473, 477 (3d Cir.1971). *See also* Treasury Regulation § 31.3121(d)–1(c) (26 C.F.R. § 31.3121(d)–1(c) (generally, employer/employee relationship exists when person for whom services are performed has right to control and direct not only result but also details and means by which result is to be accomplished; on the other hand, generally, employer/independent contractor relationship exists when worker is subject to control merely as to result and not means and methods for accomplishing result). The second was whether Critical Care, in not treating its nurses as employees, had reasonably relied on a long-standing recognized practice of a significant segment of the industry in which the nurses were engaged. The first issue, of course, is based on Section 530(a)(1), *see supra,* and the second is based on the third of the three "safe havens" of Section 530(a)(2), *see supra.*

The jury was instructed that if it found that Critical Care had a reasonable basis for not treating the nurses as employees during 1982 and 1983 under the traditional common law factors, then the jury was to answer yes to question number one of the interrogatory, which was:

Has the plaintiff, Critical Care, proved by a preponderance of the evidence that in 1982 and 1983 it had a reasonable basis for not treating the nurses in question as employees under the traditional factors discussed in the Court's charge?

Interrogatories to the Jury, question number one.

The jury was instructed that if it answered question number one in the affirmative, then it was not to proceed to question number two. The jury answered question number one in the affirmative.

■ This Court, in examining the record, finds that there is ample evidence on which the jury could reasonably have found by a preponderance of the evidence that Critical Care had a reasonable basis under Section 530(a)(1) for not treating its nurses as employees for the taxable years 1982 and 1983. Evidence was presented from which the jury could conclude that Critical Care neither directed and controlled, nor had the right to direct and control, the nurses in the performance of their duties at the hospitals. That is, Critical Care did not prescribe, nor did it have the right to prescribe the nurses' duties or the methods and means by which the nurses were to perform those duties at the hospitals. Critical Care gave no instructions to the nurses as to how the nurses were to perform their duties, and provided no training except for a brief orientation that was designed by a particular hospital and given only when a nurse had not previously worked at that hospital. Further, evidence was presented that the nurses performed no services for Critical Care on Critical Care's premises, and that the nurses were free to choose when and from whom they would accept work, and were permitted to be registered with Critical Care in addition to their regular jobs with hospitals or their registration with other agencies. From these and other factors ample in the record, this Court holds that there was more than sufficient evidence presented at trial from which the jury could conclude that Critical Care satisfied, by a preponderance of the evidence, the dictates of Section 530(a)(1) as to a reasonable basis for not treating its nurses as employees. Accordingly, the defendant United States' motion for judgment notwithstanding the verdict will be denied.

Since there was no miscarriage of justice in this case, defendant United States' motion for a new trial will also be denied.