United States Court of Appeals,

Eleventh Circuit.

No. 94-8924.

HOSPITAL RESOURCE PERSONNEL, INC., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Nov. 3, 1995.

Appeal from the United States District Court for the Southern District of Georgia. (No. CV194-053), Dudley H. Bowen, Jr., Judge.

Before BIRCH and BARKETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

BARKETT, Circuit Judge:

In this tax refund action, the United States appeals from a final summary judgment in favor of plaintiff-appellee Hospital Resource Personnel, Inc. ("HRP"). The United States, through the Internal Revenue Service ("IRS"), assessed HRP in excess of $1,144,000 for failing to withhold and pay certain federal employment taxes on behalf of its workers. HRP filed suit in district court against the United States, seeking a refund of partial payments of federal employment taxes, and a permanent injunction enjoining and restraining the United States from enforcing a lien and collecting the unpaid portion of the assessed taxes. HRP moved for summary judgment on the ground that it was exempt from a duty to withhold and pay such taxes by the "safe haven" protection of § 530 of the Revenue Act of 1978.[1]

The district court granted summary judgment, ordering the

---

[1]Pub.L. No. 95-600, 92 Stat. 2763, 2885-86 (as amended and codified at 26 U.S.C. § 3401 note (1982)).

United States to refund the taxes paid; entered a permanent injunction, ordering the United States to cease its efforts to collect employment taxes assessed against HRP; and annulled the tax lien on HRP's assets. 860 F.Supp. 1557. Because we conclude that HRP was exempt from the duty to withhold federal employment taxes, but find that the district court was without jurisdiction to enjoin the United States, we affirm the district court's ruling in part and vacate it in part.

## Facts & Procedural History

HRP, a Georgia corporation which began operating in 1987, is a business which provides specialized nurses to hospitals in need of temporary additional staffing. HRP contracts with approximately fifteen hospitals in Georgia and South Carolina. The evidence is undisputed that HRP does not prescribe the work that the nurses are to perform at the hospitals, nor does it furnish the nurses with uniforms, transportation, journals, sick pay, vacation pay, pensions, bonuses, medical insurance, or licenses. In addition, HRP permits the nurses to be employed directly by the hospitals or to register with other similar nursing agencies or registries. The nurses may choose when, where, and how often they work. HRP pays the nurses according to the number of hours worked at the client hospitals, making the payments on a regular basis, daily or weekly, as the nurses complete a particular job or project.

HRP has never withheld federal income or social security taxes from the compensation it pays to the nurses on its registry. Instead, it has always treated the nurses as independent contractors who are not subject to withholding, and at the end of

each year has furnished them with information returns on Form 1099, listing all payments made during the year.

Following an audit, the IRS assessed employment taxes, plus penalties and interest, in excess of $1,144,000, against HRP for all quarters of the years 1988, 1989, and 1990. The IRS disagreed with HRP's characterization of the nurses as independent contractors, declaring instead that they were employees subject to withholding. In response, HRP paid the income withholding tax and both portions of the social security tax due for one employee for the fourth quarter of 1990, and filed an administrative claim as well as this refund action under 26 U.S.C. § 7422.[2]

Thereafter, the IRS filed a tax lien against HRP and served a collection summons calling for financial data in order to collect on its lien. Consequently, HRP added an amendment to its complaint and filed a motion seeking a permanent injunction restraining the IRS from collecting the balance of the assessment. The government opposed the motion, arguing that the Anti-Injunction Act, 26 U.S.C. § 7421, precluded the court from exercising jurisdiction over any action or motion to enjoin the collection of taxes.[3] Although the

_____

[2]Section 7422 states in relevant part:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary....

26 U.S.C. § 7422(a).

[3]The Anti-Injunction Act states in pertinent part:

government acknowledged that the Supreme Court has recognized an exception to the Act, *see Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), it argued that HRP had failed to satisfy its strict requirements.

The district court entered summary judgment for HRP, finding that it had established a reasonable basis for treating the nurses as independent contractors under three separate provisions of § 530 of the Revenue Act.[4]  The court also entered a permanent injunction against the United States, concluding that HRP had established that the action did indeed fall within the exception to the Anti-Injunction Act:  in addition to establishing its entitlement to success on the merits, HRP had demonstrated that it would suffer irreparable injury if it were to attempt to bring a full refund action at law.

Discussion

1. Employees versus Independent Contractors

Employers must withhold federal income tax as well as social security tax from the wages they pay to their employees.  26 U.S.C. §§ 3101 et seq. & 3401 et seq.  In addition, employers must pay

---

**Prohibition of suits to restrain assessment or collection (a) Tax.**—Except as provided ... no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421.

[4]The court found that the evidence the United States proffered in opposition to the motion for summary judgment, a single IRS report, was inadmissible because it was "replete with hearsay, opinions, and legal conclusions."

social security and unemployment taxes on behalf of their employees.[5]  These taxes are known collectively as "employment taxes."  Employers are only required to withhold and pay these employment taxes, however, in regard to payments to "employees," not to "independent contractors."  In connection with payments to "independent contractors," employers only have to send annual information returns, on Form 1099 to the workers and on Forms 1096 & 1099 to the IRS, indicating the income paid during the year.[6]

Traditionally, common law rules served as the basis for the classification of particular workers or classes of workers as employees or independent contractors.[7]  Section 530 of the Revenue Act addresses the distinction specifically within the tax context.  In addition to providing generally that workers are not employees if the taxpayer has a reasonable basis for not treating them as employees, it affords three statutory "safe haven" provisions allowing taxpayers to treat workers as independent contractors, even though under the common law they might be considered employees.  *Institute for Resource Management, Inc. v. United States,* 22 Cl.Ct. 114, 115-16 (1990).

---

[5]Congress has imposed social security taxes on the employer and the employee under the Federal Insurance Contributions Act ("FICA").  26 U.S.C. § 3101 et seq.  It has imposed unemployment taxes on the employer under the Federal Unemployment Tax Act ("FUTA").  26 U.S.C. § 3301 et seq.

[6]26 C.F.R. § 1.6041-1(a).

[7]*See, e.g., General Investment Corp. v. United States,* 823 F.2d 337, 341-42 (9th Cir.1987).  Both the FICA and FUTA statutes define an employee as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."  26 U.S.C. §§ 3121(d)(2) & 3306(i).

Section 530 of the Revenue Act provides in pertinent part:

CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.

(a) Termination of Certain Employment Tax Liability.—

(1) In general.—If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee ..., and

(B) ... all Federal tax returns (including information returns) required to be filed by the taxpayer ... are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then ... the individual shall be deemed *not to be an employee unless the taxpayer had no reasonable basis* for not treating such individual as an employee.

§ 530(a)(1) (emphasis added). Section 530(a)(2) provides the additional three statutory safe havens, two of which are relevant to the present case:

(2) Statutory standards providing one method of satisfying the requirements of paragraph (1).—For purposes of paragraph (1), *a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee* ... if the taxpayer's treatment of such individual ... was *in reasonable reliance on any of the following:*

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

. . . . .

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

§ 530(a)(2) (emphasis added).

Thus, § 530 provides several means through which a taxpayer may prove that it had a reasonable basis for not treating a worker as an employee: the taxpayer may rely on common law rules under §

530(a)(1),[8] or on any of the explicit statutory exceptions of §
530(a)(2).  Moreover, a taxpayer need satisfy only one of the
available safe havens.

HRP relies on not one but three of the safe havens to support
its characterization of the nurses as non-employees:  (1) judicial
precedent,  published  rulings,  and  technical  advice  (§
530(a)(2)(A));   (2)  long-standing  recognized  practice  of  a
significant  segment  of  the  industry  in  which  the  taxpayer  is
engaged (§ 530(a)(2)(C));  and (3) common law (§ 530(a)(1)(B)).
a. Judicial Precedent, Published Rulings, & Technical Advice

HRP argues that its situation falls within the safe haven
provision of § 530(a)(2)(A) in three respects.  First, a published
ruling, Revenue Ruling 61-196, 1961-2 CB 155, held in part that
"private duty nurses" are generally independent contractors, not
employees, except when engaged on a full-time basis on a salary in
the regular employ of individuals or institutions with prescribed
routines during fixed hours.  Revenue Ruling 61-196 states in part:

> Registered nurses, by reason of their professional status,
> generally are independent contractors in the performance of
> private duty nursing services.  They hold themselves out to
> the public as exercising an independent calling requiring
> specialized skills.  Ordinarily, they have full discretion in
> administering their professional services and are not subject
> to sufficient direction or control to warrant the finding of
> an employment relationship, even though they may be subject to
> the supervision of the attending physician.  Under such
> circumstances they are independent contractors and not
> employees for Federal employment tax purposes.

HRP provided undisputed evidence that, like private duty

---

[8]For a detailed analysis of congressional intent, common
law, and "reasonable basis" under § 530(a)(1), see *Critical Care
Register Nursing, Inc. v. United States,* 776 F.Supp. 1025, 1027-
28 (E.D.Pa.1991).

nurses, its nurses do not work routine fixed hours or full time, but rather exercise full discretion in making schedules and administering their professional services, accepting and declining HRP assignments at-will. Nor do HRP nurses receive a salary, but rather receive compensation from HRP on an hourly basis. Moreover, like private duty nurses, HRP nurses may hold themselves out to the public for direct employment with hospitals, other agencies, or private parties.

Although the government argues that the status of "private duty nurses" differs from that of HRP's nurses, we can find no authority to support such a distinction. The only significant difference we discern is that HRP's nurses essentially use HRP as an employment agency. The government suggests that because HRP's nurses do not work in private settings their status is not comparable, and thus HRP's reliance on the Revenue Ruling was unreasonable. We find this rationale unpersuasive. There is nothing in the record to suggest that HRP could not also send its nurses to work in a private setting; nor does there appear to be a difference in status between private duty and HRP nurses working subject to the supervision of attending physicians.

Second, HRP cites *Critical Care Register Nursing, Inc. v. United States,* 776 F.Supp. 1025 (E.D.Pa.1991), as judicial precedent under § 530(a)(2)(A) to support its position that the nurses are independent contractors. In *Critical Care,* a case practically indistinguishable from the one before us,[9] the district

[9]Just as in this action, *Critical Care* involved a business which provided registered nurses to hospitals in need of temporary additional staffing. Critical Care contracted with

court for the Eastern District of Pennsylvania concluded that because the taxpayer had established a reasonable basis for not treating its workers as employees under traditional common law rules, it had satisfied the dictates of the general safe haven provision, § 530(a)(1), and was thus exempt from employment tax liability. *Id.* at 1028-29.

Although the government mentions *Critical Care* in its appellate brief, it does not disagree with or distinguish it. It simply argues that whether workers are employees or independent contractors, and whether HRP had a reasonable basis to treat its workers as independent contractors, are factual questions for a jury to decide. This response is inapposite to HRP's claim that judicial precedent supports its classification of its workers as independent contractors. Moreover, the record in this case does not disclose any disputed *factual* issues for a jury to decide. The facts here are undisputed. The issue is whether the undisputed facts support the conclusion that HRP had a reasonable basis to classify the nurses as independent contractors.[10]

---

hospitals to supply nurses according to the hospitals' requests for particular shifts, and contracted with nurses to work those shifts. Critical Care did not prescribe for the nurses the work they were to perform, nor did it furnish uniforms, transportation, or vacation pay. In addition, Critical Care permitted its nurses to be employed directly by hospitals and to register with other agencies. *Id.* at 1026.

[10]*Cf. Overeen v. United States,* No. 90-1920-W, 1991 WL 338327 (W.D.Okla. Sept. 4, 1991) (court denied plaintiff's summary judgment motion, concluding in part that the home care placement agency failed to provide sufficient facts to establish that its reliance on industry practice and an accountant's advice was reasonable such that, even if its workers were employees under the common law, it would be exempt from employment taxes under the statutory safe havens of § 530).

Finally, in an affidavit, the vice-president and co-founder of HRP stated that when he and his wife started HRP, they relied in part on the technical advice of several attorneys and a certified public accountant in classifying the nurses as independent contractors. He stated that the attorneys suggested that HRP should model itself after its chief competitor, noting that the IRS had audited the competitor and made no adverse ruling concerning the competitor's characterization of its nurses as independent contractors.

The government argues that Congress did not intend for taxpayers to rely on the technical advice of their own consultants, but rather on advice from the IRS. Because we conclude that HRP satisfied the "published ruling" and "judicial precedent" portions of § 530(a)(2)(A), we need not, and do not, address the meaning and congressional intent behind the term "technical advice."

b. Long-Standing Industry Practice

With respect to the safe haven provision of § 530(a)(2)(C), HRP argues that in treating the nurses as independent contractors in the same manner as its chief competitor, it is following the "long-standing recognized practice of a significant segment of the industry in which [it] [i]s engaged." While we recognize that under some circumstances one or two businesses may constitute a significant segment of an industry, we are reluctant to so hold under the facts present in this case. Even though HRP offered undisputed evidence that its only significant competitor in Augusta, Georgia, also treats its workers as independent contractors, HRP did not provide any evidence as to other

competitors in the geographic region in which it operates, namely Georgia and parts of South Carolina.  Accordingly, we find that the evidence on which the district court relied was insufficient to establish that HRP was exempt from employment taxes as a matter of law under § 530(a)(2)(C).

c. Common Law

Finally, the district court placed significant reliance on the common law factors and the general safe haven provision of § 530(a)(1)(B) in reaching its conclusion that HRP had a reasonable basis for treating the nurses as independent contractors.

The IRS has compiled a non-exclusive list of twenty factors to aid in analyzing the status of workers.  Those indicative of *employee* status include:  (1) instructions from the employer;  (2) training;  (3) integration of worker's services into employer's business;  (4) worker's services rendered personally;  (5) a continuing relationship between worker and employer;  (6) set hours of work;  (7) mandatory full-time employment;  (8) work on employer's premises;  (9) set order of tasks;  (10) oral or written reports;  (11) payment by the hour, week, or month;  and (12) right to discharge for reasons other than nonperformance.  Those indicative of *independent contractor* status include:  (13) worker's right to hire, supervise, and pay assistants;  (14) payment of own business and/or travel expenses;  (15) furnishing own tools and materials;  (16) significant investment;  (17) realization of profit or loss;  (18) right to work for more than one firm at a time;  (19) right to make service available to the general public;  and (20) right to terminate without incurring liability.  *See*

Rev.Rul. 87-41, 1987-1 CB 296.

Although no one factor is definitive on its own, collectively the factors define the extent of an employer's control over the time and manner in which a worker performs. This control test is fundamental in establishing a worker's status. *General Inv. Corp. v. United States,* 823 F.2d 337, 341 (9th Cir.1987); *REAG, Inc. v. United States,* 801 F.Supp. 494, 501 (W.D.Okla.1992); *Critical Care Register Nursing, Inc. v. United States,* 776 F.Supp. 1025, 1028-29 (E.D.Pa.1991); *see* Rick A. Pacynski, *Legal Challenges in Using Independent Contractors,* 72 Mich.B.J. 671 (1993); 13 Jacob Mertens, Jr., Mertens Law of Federal Income Taxation § 47A.09 (July 1995).

HRP presented undisputed evidence that it does not control the manner and means of the nurses' work: HRP does not instruct or train the nurses; it does not mandate full-time employment; it neither schedules the tasks nor sets the number of hours the nurses must work; and it is the nurses themselves who provide transportation, incidental expenses, uniforms, tools, and materials. In addition, while HRP does require the nurses to provide their services personally and pays them on set time intervals (hourly), the nurses do not work on HRP's premises, and they are free to provide their services directly to hospitals and to register with other similar nursing agencies.[11]

---

[11]We note, by way of analogy, that generally physicians, dentists, and others who follow an independent trade, business, or profession in which they offer their services to the public are not common law employees. In addition, although the IRS has ruled that physicians who work under contract with a corporation are employees rather than independent contractors, contrary to the situation here, those physicians worked solely for the

The government concedes that HRP would be entitled to prevail if the common law supported its assertion that the nurses were independent contractors. Under the common law, however, whether the nurses are independent contractors depends on whether or not HRP controls the manner in which they work, which, the government argues, is a disputed issue of fact. In support of its argument, the government refers this Court to *In re Critical Care Support Services, Inc.,* 138 B.R. 378 (Bankr.E.D.N.Y.1992), a case involving a nurse placement agency in which the bankruptcy court determined that the nurses were employees under the control of the agency. However, the bankruptcy court in *In re Critical Care* did not act as a factfinder, but instead drew conclusions based upon undisputed facts, as did the district court here. Moreover, three important factual differences exist between *In re Critical Care* and our situation: (1) the placement agency, Critical Care, told its nurses which shifts and hours to work; (2) Critical Care's predecessor had treated the same nurses as employees; and (3) after two years of treating its nurses as independent contractors, Critical Care reassigned them the title of "employee" and reported taxes accordingly.

We agree with the district court's conclusion that the undisputed facts satisfy many of the twenty factors set forth by the IRS, and therefore that HRP, as a matter of law, did not control the manner in which the nurses performed their work. Accordingly, we hold that HRP was exempt from employment taxes

corporation and had set hours of work. 13 Mertens § 47A.09 (citing Reg. § 31.3401(c)-1(c); TAM 9149001).

under §§ 530(a)(2)(A) & (1)(B) because of its reasonable reliance on Revenue Ruling 61-196, judicial precedent, and common law in treating the nurses as independent contractors.

2. Permanent Injunction

We turn now to consideration of whether the district court, upon determining that HRP succeeded on the merits, had jurisdiction to enjoin the government from collecting the remaining employment taxes assessed against HRP.  An employer may bring an action at law against the government for recovery of erroneously assessed internal revenue taxes under 28 U.S.C. §§ 1340 & 1346.  An employer may bring an action in equity to enjoin the government from collecting taxes, however, only upon a showing that the court has jurisdiction despite the Anti-Injunction Act, 26 U.S.C. § 7421, *supra* note 3.  HRP argues that while a literal reading of the Anti-Injunction Act would appear to deprive a court of the power to grant injunctions against tax collection, the Supreme Court has held that exceptions to the Anti-Injunction Act exist in certain limited circumstances.  *See Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962);  *Miller v. Standard Nut Margarine Co.,* 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932).  Few taxpayers, however, have been able to meet these strict requirements.

In *Williams Packing,* a corporation sought to enjoin collection of certain past due withholding taxes, claiming that an assessment of the taxes would force it into bankruptcy, thus causing irreparable injury.  *Williams Packing,* 370 U.S. at 5, 82 S.Ct. at 1128.  The Court overturned the grant of a permanent injunction,

stating that a court may not grant such an injunction merely because collection of a tax would cause irreparable harm to the taxpayer's enterprise. *Id.* at 5-6, 82 S.Ct. at 1128. It held instead that a suit for an injunction may be maintained only when, "under the most liberal view of the law and the facts," the government cannot establish its claim at the time of the suit. *Id.* at 7, 82 S.Ct. at 1129. The Court explained,

> [t]he manifest purpose of § 7421(a) [the Anti-Injunction Act] is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund.... Nevertheless, if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and, under the *Nut Margarine* case, the attempted collection may be enjoined if equity jurisdiction otherwise exists.

*Williams Packing,* 370 U.S. at 7, 82 S.Ct. at 1129 (footnote omitted).

In *Nut Margarine,* a manufacturer of "Southern Nut Product" brought an action to restrain the government from collecting federal oleomargarine taxes on its product. Prior to the assessment, however, three lower federal court cases had held that similar products were nontaxable and, by letter, the tax collector had informed the manufacturer that its product was not subject to the tax. As the Court made clear, the government had no chance of prevailing:

> This is not a case in which the injunction is sought upon the mere ground of illegality because of error in the amount of the tax. The article is not covered by the [Oleomargarine] act. A valid oleomargarine tax could by *no legal possibility* have been assessed against [the manufacturer], and therefore the reasons underlying [the Anti-Injunction Act] apply, if at all, with little force.

*Nut Margarine,* 284 U.S. at 510, 52 S.Ct. at 263 (emphasis added).

As in *Williams Packing,* but unlike in *Nut Margarine,* at the time HRP initiated this suit—judicial hindsight notwithstanding—the government had at least the legal possibility of prevailing. As the Court stated in *Williams Packing:* "the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it *at the time of suit.*" *Id.* at 7, 82 S.Ct. at 1129 (emphasis added). Because the circumstances necessary to escape the Anti-Injunction Act's proscription against a court's power to grant injunctions are not present in this case, we conclude that the district court was without jurisdiction to enjoin the government.[12]

### Conclusion

Because we find that HRP established a reasonable basis for treating the nurses as independent contractors under two provisions of § 530 of the Revenue Act, we AFFIRM the district court's ruling granting summary judgment to HRP in its action at law for an employment tax refund. Because we conclude that the Anti-Injunction Act precluded the district court from exercising jurisdiction to enjoin the government from collecting the unpaid portion of the taxes it assessed against HRP, we VACATE the injunction. We REMAND this case to the district court for further proceedings consistent with this opinion.

AFFIRMED in part;  VACATED in part;  and REMANDED.

---

[12]We note that this determination will have little significance on the outcome of this action. As the government conceded at oral argument, if the Court determined that HRP's nurses were independent contractors, it would be impracticable for the government to pursue collection of the remaining taxes.