# Whether Conflict of Interest Laws Apply to a Person Assisting a Supreme Court Nominee

On the facts described, former Senator Fred Thompson would not be an "officer" or "employee" of the federal government if he assisted a Supreme Court nominee during the process of confirmation by the Senate, and as a consequence the federal conflict of interest laws would not apply to him.

July 22, 2005

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked whether, for purposes of the federal conflict of interest laws, former Senator Fred Thompson would be an "officer" or "employee" of the federal government if he assisted a Supreme Court nominee during the process of confirmation by the Senate. On the facts as you have described them, we believe that Mr. Thompson would not be an "officer" or "employee" and that, as a consequence, the conflict of interest restrictions would not apply to him.

As you have explained the facts to us, Mr. Thompson informed the President that he was available to assist the nominee, to advocate the nominee's confirmation, and to advise the nominee about how to deal with members of the Senate. The President encouraged such an arrangement, but the nominee will decide whether to take up Mr. Thompson's offer. The nominee, rather than anyone at the White House, will have the authority to end the arrangement at any time. Mr. Thompson will report to the nominee, not to the White House. He will not hold himself out as speaking for the government. Mr. Thompson will represent the nominee only for purposes of his nomination to the Supreme Court and only in his capacity as a nominee, not in his capacity as a sitting federal judge. Although Mr. Thompson will consult and work with government personnel, he will not be under their direction or control, and he, in turn, will not direct or control government personnel, for example by calling or chairing meetings of government personnel. He will not have an office in a federal building or otherwise have the right of an employee to use government facilities. The government will not pay for his services or cover his expenses.

As we have previously explained, the application of the principal conflict of interest restrictions governing the Executive Branch depends on the meaning of the terms "officer" and "employee." *See Application of Conflict of Interest Rules to Appointees Who Have Not Begun Service*, 26 Op. O.L.C. 32 (2002) ("*Conflict of Interest Rules*"). The major conflict of interest provisions—the criminal conflict of interest laws, 18 U.S.C. §§ 202–209 (2000); the directives in Executive Order 12674, Principles of Ethical Conduct for Government Officers and Employees, 3 C.F.R. 215 (1989 Comp.); and the Standards of Ethical Conduct for Employees of the Executive Branch, 5 C.F.R. pt. 2635 (2005) ("Standards of Ethical Conduct")—all apply only to "officers" and "employees" of the federal government.

Title 18 does not define "officer" or "employee," but we have found the definitions in title 5 to be "'the most obvious source of a definition' for title 18 purposes." *Applicability of Executive Order No. 12674 to Personnel of Regional Fishery Management Councils*, 17 Op. O.L.C. 150, 154 (1993) ("*Fishery Management Councils*") (quoting *Conflict of Interest—Status of an Informal Presidential Advisor as a "Special Government Employee,"* 1 Op. O.L.C. 20 (1977) ("*Informal Presidential Advisor*")). The title 5 definitions set up a three-part test. Under 5 U.S.C. § 2104 (2000), an "officer" is someone who is (1) "required by law to be appointed in the civil service by [the President, a court of the United States, the head of an Executive agency, or the Secretary of a military department] acting in an official capacity," (2) "engaged in the performance of a Federal function under authority of law or an Executive act," *and* (3) "subject to the supervision" of the President or the head of an executive agency or military department. Under 5 U.S.C. § 2105 (2000), the term "employee" covers an "officer" and any person who is engaged in federal functions, but is appointed and supervised by specified federal officials other than those able to appoint and supervise "officers." *See Conflict of Interest Rules*, 26 Op. O.L.C. at 33. For both "officers" and "employees," therefore, the test is essentially the same.[1]

The executive order reaches "employees," a term that covers "any officer[s] or employee[s] of an agency." Exec. Order No. 12674, § 503(b). We have concluded that these terms in the executive order "are identical in scope and meaning with the terms 'officer' and 'employee' as used in 5 U.S.C. §§ 2104 and 2105." *Fishery Management Councils*, 17 Op. O.L.C. at 153. Furthermore, because the Standards of Ethical Conduct implement the executive order, we have found the same definitions applicable to the implementing regulations as well as the executive order. *Id*. at 150 n.2, 158.

In each instance, therefore, the application of the conflict of interest rules depends on the meaning of "officer" or "employee," and those terms take their meaning from the three-part test derived from title 5: (1) "required by law to be appointed in the civil service by [a federal official] acting in an official capacity," (2) "engaged in the performance of a Federal function under authority of law or an Executive act," and (3) "subject to the supervision" of federal officials. A person is an "officer" or "employee" only if he meets *all* three requirements. *See Conflict of*

---

[1] For purposes of the conflict of interest laws, title 18 does define a subclass of "employees." The term "special Government employee" includes "an officer or employee of the executive . . . branch of the United States Government . . . who is retained, designated, appointed, or employed to perform, with or without compensation, for not to exceed one hundred and thirty days during any period of three hundred and sixty-five consecutive days, temporary duties, either on a full-time or intermittent basis." 18 U.S.C. § 202(a) (2000). This definition itself depends on the meaning of the terms "officer" and "employee," which are not defined in section 202(a).

*Interest Rules*, 26 Op. O.L.C. at 35 (citing *McCarley v. MSPB*, 757 F.2d 278, 280 (Fed. Cir. 1985)).

On the facts you have described, none of the three requirements would be satisfied. For purposes of the conflict of interest restrictions, therefore, Mr. Thompson would not be an "officer" or "employee."

First, Mr. Thompson would not be appointed in the civil service by a federal official. In *Informal Presidential Advisor*, we observed that this requirement suggests "a formal relationship between the individual and the Government," 1 Op. O.L.C. at 21, and that "[i]n the usual case, this formal relationship is based on an identifiable act of appointment," *id.* Here, there will be no formal act of appointment by a federal official. Indeed, although the President has responded positively to Mr. Thompson's offer to be available to assist the nominee, the choice to use Mr. Thompson's services will be left to the nominee, acting in his personal capacity.

To be sure, "an identifiable act of appointment may not be absolutely essential for an individual to be regarded as an officer or employee in a particular case where the parties omitted it for the purpose of avoiding the application of the conflict of interest laws or perhaps where there was a firm mutual understanding that a relatively formal relationship existed." *Id.*; *see also Ass'n of Am. Physicians & Surgeons v. Clinton*, 187 F.3d 655, 662 (D.C. Cir. 1999). On the present facts, however, the absence of a formal appointment does not arise from an attempt to circumvent the conflict of interest laws. Because none of the three requirements is met, the absence of a formal appointment does not avoid a conclusion that would otherwise be reached about application of conflict of interest rules. Instead, the absence of an appointment reflects that the federal government has only an informal relationship with Mr. Thompson.

Second, Mr. Thompson will not be "engaged in the performance of a Federal function under authority of law or an Executive act." He will advocate the nominee's confirmation and will advise the nominee about dealing with the Senate. In this role, he will not purport to speak for the government. He therefore will be performing the function of a private advocate taking part in the debates and proceedings on confirmation, rather than the function of a government official. *See* Office of Government Ethics ("OGE"), *Letter to a Designated Agency Ethics Official*, Informal Advisory Ltr. 95x8, 1995 WL 855434, at *7 (July 10) (a person would not be an employee where, "pursuant to the proposed arrangement, [he] would be working . . . as a representative of [an outside person or group], not the United States, and . . . would not be authorized to speak, or purport to speak, on behalf of the agency"); *cf., e.g.*, 5 C.F.R. § 2635.807(b) (2005) (restricting an employee's references to his official position when he is speaking or writing in a private capacity). Furthermore, he will not be directing the actions of federal officials, for example by "coordinating the Administration's activities in [this] particular area," *Informal Presidential Advisor*, 1 Op. O.L.C. at 23, or by calling

or chairing meetings of government personnel, *id.* He will consult and work with government officials, but in this respect he will be in the same position as many representatives of outside persons or groups who share interests with the government. Such cooperation does not mean that the representative of the outside person or group is performing a federal function.

Third, Mr. Thompson will not be subject to the direction of federal officials. To the extent that Mr. Thompson is not determining his own activities, the nominee in his private capacity will direct what Mr. Thompson does. *See* OGE, *Memorandum to Designated Agency Ethics Officials, General Counsels and Inspectors General Regarding Summary of Ethical Requirements Applicable to Special Government Employees*, Informal Advisory Mem. 00x1, 2000 WL 33407342, at *2 (Feb. 15) ("*Summary of Ethical Requirements*") (although the degree of control over short-term employees need not be as great as over permanent employees, "supervision or operational control remains an important attribute of employee status"). The nominee, moreover, will decide whether his assistance will be used at all and, if so, for how long. The power to end Mr. Thompson's service, which the nominee rather than the government will have, is "a key indicator of supervision." OGE, *Letter to an Individual*, Informal Advisory Ltr. 01x11, 2001 WL 34091920, at *2 (Nov. 29); *see Fishery Management Councils*, 17 Op. O.L.C. at 155–56.

*Informal Presidential Advisor* observed that this third part of the test "has been of importance in the conflict-of-interest area primarily in determining whether an individual is an independent contractor rather than an employee and therefore not subject to the conflict-of-interest laws." 1 Op. O.L.C. at 21. Mr. Thompson will not be working for the government and will not even be the government's independent contractor; it is therefore unnecessary to use the test to draw that distinction here. Nevertheless, we note that the factors by which independent contractors are distinguished from employees point, overwhelmingly, to the conclusion that Mr. Thompson is not an employee of the government. He does not take instructions from the government or receive government training; his work is not integrated into the government's business; he does not have a continuing relationship with the government; the government does not set his hours of work; he is not required to report to the government on his activities; he is not paid by the government; the government is not responsible for his expenses; the government cannot discharge him; he furnishes his own materials (such as they are); he may do other work at the same time; and he may quit without liability. *See Hosp. Res. Pers., Inc. v. United States*, 68 F.3d 421, 427 (11th Cir. 1995) (cited in OGE, *Summary of Ethical Requirements*, 2000 WL 33407342, at *15 n.4). Furthermore, although Mr. Thompson may consult with officials on government premises, he would not have an office in a government building or otherwise have the right to use government facilities that employees enjoy. *Cf. Informal Presidential Advisor*, 1 Op. O.L.C. at 21 (a person is probably an employee if he "works on Government premises under the direction of Government personnel and performs work of a kind normally handled by Government employees"). Mr. Thompson does render

his services personally, *see Hosp. Res. Pers.*, 68 F.3d at 427, and it may be that a lower level of control is necessary to find that professional services, as opposed to nonprofessional ones, involve the level of supervision that could make someone an employee, *see* OGE, *Summary of Ethical Requirements*, 2000 WL 33407342, at *15 n.3. But an examination of the usual factors dictates the conclusion here that the government would not control Mr. Thompson's activities.

We therefore conclude that Mr. Thompson, on the facts as stated, would not be an "officer" or "employee" subject to the federal conflict of interest rules.

STEVEN G. BRADBURY
*Acting Assistant Attorney General*
*Office of Legal Counsel*